NOT DESIGNATED FOR PUBLICATION

No. 120,271

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY W. D. OGG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed October 11, 2019.
Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Anthony W. D. Ogg appeals from his sentence after pleading guilty
to charges of aggravated criminal sodomy, an off-grid person felony, and aggravated
indecent solicitation of a child, a severity level 5 person felony. Ogg moved for a
downward durational departure to the sentencing grid on the aggravated criminal sodomy
charge and cited both statutory and nonstatutory mitigating factors to warrant a departure.
The district court ultimately denied Ogg's motion, determining that there were not
substantial and compelling reasons to warrant a departure. Because the record does not
demonstrate the district court based its ruling on an error of law or an error of fact, and

1

we are unable to conclude that no reasonable person would take the view adopted by the trial court, we affirm.

FACTUAL AND PROCEDURAL HISTORY

As part of a plea agreement, Ogg entered a guilty plea to one count of aggravated criminal sodomy with a 3-year-old family member and one count of aggravated indecent solicitation of a 10-year-old family member. Under the agreement, Ogg could request a departure sentence.

Before sentencing, Ogg moved the court for a downward durational departure under K.S.A. 2018 Supp. 21-6627(d)(1), arguing that substantial and compelling reasons existed to support a departure. Ogg argued in the motion and at the sentencing hearing that an evaluation showed he fell within the "below average risk category of the Static 99R, which is 'an instrument designed to assist in the prediction of sexual and violent recidivism for sexual offenders.'" This indicated, in Ogg's estimation, a low risk of reoffending and amenability to a long-term treatment program. He also expressed remorse and understood that his actions were immoral and illegal and that he "'typically makes the right choice' as evidenced by his limited involvement with the criminal justice system." Defense counsel explained that the crimes were not premeditated but were "crimes of opportunity." He stressed that Ogg accepted responsibility immediately upon being questioned. Moreover, his lack of prior convictions—there was no dispute that he had the lowest criminal history score of I—suggested an "extremely likely" chance of success in conforming his behavior in the future to appropriate interactions with minors and that a durational departure would "promote offender reformation." At the sentencing hearing, defense counsel stated, "Your Honor, I simply want to point out that at 34 years of age Mr. Ogg has led a fairly exemplary lifestyle and does have a supportive family. We believe that they would be an integral part of his rehabilitation. And so we're asking the Court to give him that opportunity." Defense counsel asked the district court to grant

2

the departure to the sentencing grid and impose a prison sentence between 147 and 165 months on the aggravated criminal sodomy charge.

The State asked the district court to impose the presumptive sentence of life without the possibility of parole for 25 years (hard 25) on the aggravated criminal sodomy charge, 34 months on the aggravated indecent solicitation of a child charge, and to run those sentences consecutive. The State disputed whether substantial and compelling reasons to depart existed, noting first that the charged victims were young family members of Ogg who were "particularly vulnerable." At least one of the victims had a learning disability and Ogg admitted to grooming a third child that he had not yet touched. Ogg was often babysitting or taking care of them. The State clarified that contrary to defense counsel's assertion, Ogg did not admit his actions to law enforcement but instead invoked his right to remain silent after police advised him of his *Miranda* rights. The State explained that Ogg's actions show he was "not someone who typically makes the right choice," but rather someone who was "actively hiding his behavior" and "got caught."

The mother of one of the victims then spoke to the district court, explaining that Ogg was like a father figure to her children and asked "that he get the max for what he did, not only for what he's done to [her] daughter, but for other children that he could do it to."

The district court denied Ogg's motion for departure, noting the "very serious" nature of the charges. The court acknowledged Ogg's lack of criminal history, but it noted that his criminal record was "not unusual" for a sexual offender. The court also considered the number and age of the child victims and commented on the "highly damaging" cycle that many people who sexually abuse children were themselves victims as a child. The court noted that some sort of long-term treatment would be helpful, but it ultimately found that there were significant threats and public safety risks involved that

showed a lack of substantial and compelling reasons to depart from the presumptive sentence.

After stating that it had "[c]onsidered all the required factors," the district court sentenced Ogg to the presumptive hard 25 sentence on the aggravated criminal sodomy charge and 34 months' incarceration on the aggravated indecent solicitation of a child charge—the high number in the grid box. The court ran the sentences consecutive and ordered lifetime postrelease supervision as required by statute.

Ogg timely appeals.

ANALYSIS

Ogg argues the district court erred in denying his motion for a downward durational departure, asking this court to vacate his sentence and remand for resentencing. He contends that the district court abused its discretion in finding that numerous mitigating factors did not constitute substantial and compelling reasons to warrant a departure.

The State contends that the district court did not abuse its discretion because a reasonable person could agree with the court's ruling. The State asserts that Ogg fails to show that he is entitled to the relief requested, as the district court considered all the mitigating factors present before determining that substantial and compelling reasons did not exist to warrant a departure.

*The standard of review is abuse of discretion.*

As Ogg notes, this court applies the abuse of discretion standard when reviewing a district court's decision on a departure sentence under K.S.A. 2018 Supp. 21-6627,

4

commonly known as Jessica's Law. See *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). As the movant, Ogg bears the burden of showing an abuse of discretion. See *State v. Powell*, 308 Kan. 895, 910, 425 P.3d 309 (2018).

*District courts must use the two-step framework from K.S.A. 2018 Supp. 21-6627 and* Jolly *when considering a departure in Jessica's Law case.*

Under Jessica's Law, a defendant who is 18 years of age or older and convicted of a first-time offense of aggravated criminal sodomy with a child under age 14 shall be sentenced to life in prison with a mandatory minimum term of imprisonment of at least 25 years, "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2018 Supp. 21-6627(a)(1)(D), (d)(1). Mitigating circumstances include, but are not limited to, whether:

"(A) The defendant has no significant history of prior criminal activity;

"(B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances;

"(C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor;

"(D) the defendant acted under extreme distress or under the substantial domination of another person;

"(E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and

"(F) the age of the defendant at the time of the crime." K.S.A. 2018 Supp. 21-6627(d)(2).

5

Ogg correctly asserts that the Kansas Supreme Court has defined "'substantial'" to mean "'something that is real, not imagined; something with substance and not ephemeral." *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001). Likewise, our court has defined "'compelling'" to mean that the district court is forced "'to leave the status quo or go beyond what is ordinary.'" 271 Kan. at 728.

The framework to determine whether the district court has properly followed the mandate of K.S.A. 2018 Supp. 21-6627 was stated in *Jolly*, 301 Kan. at 324:

> "[T]he proper statutory method when considering a departure from a Jessica's Law sentence is for the district court *first to review the mitigating circumstances* without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, *the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart* from the otherwise mandatory sentence." (Emphases added.)

The *Jolly* court also explained that while mitigating circumstances are necessary for a finding of substantial and compelling reasons to depart, mitigating circumstances do not automatically warrant a departure. See 301 Kan. at 323.

More recently, the Kansas Supreme Court clarified that a district court need not affirmatively explain on the record that it did not weigh aggravating and mitigating circumstances when *denying* a departure. In fact, more importantly here, the court is not required to state its reasons for denying a departure motion at all. *Powell*, 308 Kan. at 908-09. The judge is free to consider any evidence that might reasonably bear on the proper sentence for a particular defendant. 308 Kan. 895, Syl. ¶ 8.

On appeal Ogg asserts one statutory mitigating factor and several nonstatutory mitigating factors to justify his request for a departure sentence: (1) his limited criminal history under K.S.A. 2018 Supp. 21-6627(d)(2)(A); (2) the evaluation that showed he

6

was "'below average risk'" for reoffending; (3) his expression of remorse, acceptance of responsibility, and commitment to rehabilitation through long-term treatment; (4) his supportive family; and (5) that a sentence of 147 to 165 months was still a significant penalty.

Here, the transcript of the sentencing hearing shows that the district court specifically addressed two of the mitigating factors. First, the court noted that Ogg's lack of criminal history was not unusual, therefore not a reason to depart. And second, the court agreed that the long-term therapy that had been recommended would be helpful. But the judge expressed concern that the case involved more than one child. He commented on the "very serious" nature of the charges, the impact on the child victims, and the "significant threats . . . and public safety risks." Ogg admitted to inappropriately touching both girls on their privates and forcing the younger girl to perform oral sex on him. The State pointed out that Ogg showed the older girl pornography and was actively grooming another young girl that he had not yet touched but hoped to sexually touch in the future. His older victim and the girl he was grooming both had learning disabilities. The State also pointed out that Ogg acknowledged that he had attempted to stop his sexually deviant behavior but had been unable to do so. Before ultimately concluding that Ogg had not shown substantial and compelling reasons to depart the judge stated that he had considered "all the required factors." Later, the court stressed that it considered letters from the victim's family and the victim, but that "they're just one of many factors."

Ogg does not claim any legal or factual error by the district court. He does not argue that the court improperly weighed aggravating circumstances against mitigating factors contrary to *Jolly*. Nor does he assert that the court's comments regarding the mitigating factors were improper. He does not claim that the court considered any improper evidence in denying the departure motion. He only argues that the court abused its discretion by finding that the mitigating factors he presented to the district court did not constitute substantial and compelling reasons to depart. He presents no authority to

support his claim that the mitigating factors he presented were sufficient alone to justify a departure sentence. In fact, the mere assertion of mitigating factors does not amount to substantial and compelling reasons to depart. See *Jolly*, 301 Kan. at 323.

Although the district court judge here did not recite each step of the *Jolly* framework on the record when denying Ogg's departure motion, failing to recite each step of the *Jolly* framework does not constitute an abuse of discretion. See *Powell*, 308 Kan. at 914. The district court's clarification on the record that it had considered "all the required factors" and that the victim statements were "just one of many factors" it had considered compel us to conclude that the court complied with *Jolly*, albeit without directly stating so on the record. And, Ogg does not claim otherwise.

So we are left to consider whether the record shows that the district court abused its discretion. See *Powell*, 308 Kan. at 911-12. As outlined, the record does not demonstrate the district court based its ruling on an error of law by applying an incorrect legal framework or by considering improper facts. And Ogg does not identify any such errors. And, as the final factor in an abuse of discretion analysis, we are unable to conclude that no reasonable person would take the view adopted by the trial court. Accordingly, we hold Ogg has failed to show the district court abused its discretion.

Affirmed.